purchased by the said committee; *sixth*, that immediately after sale the committee should proceed to organize a new company; *seventh*, that the committee should convey the property to the new company; and then follows provision for the issuance and distribution of the stock and bonds of the new company. It seems clear, therefore, that the plan proposed contemplated reorganization by foreclosure, and nothing else, and that the power to perfect, modify, and carry out such details of the principles of such reorganization, as in the judgment of such committee might seem advisable, gave no power whatever to change the principle of reorganization proposed by such plan, viz., foreclosure. If there was any doubt upon this subject, the next paragraph in section second of the agreement, which reads as follows, sets the matter entirely at rest: "The said committee is hereby authorized to make such alteration or modification of said plan for reorganization as two out of three of the said committee shall, by an instrument in writing under their hands, duly acknowledged and deposited with the said Knickerbocker Trust Company, declare to be, in their opinion, for the best interest of the parties of the first part." Here is conferred an authority to alter and modify the plan, and a designation of how this authority is to be exercised. If by this provision a power to alter and modify was conferred, the method was designated, and the power could be exercised in no other way so as to bind all, even if such alteration or modification was assented to by all but one of the persons executing the agreement. The money and stock deposited was subject to no contingencies except those arising from the plan of reorganization contained in the agreement, which was to be, beyond question, by foreclosure, or from this plan modified and altered in such manner as two out of three of the committee should by an instrument in writing, under their hands, duly acknowledged and deposited with said trust company, declare to be in their opinion for the best interests of the stockholders, etc. We cannot find that it is anywhere averred that any such modification was ever signed, acknowledged, or deposited, as required by the agreement, and therefore the committee were bound to act according to the provisions of the original plan, and to reorganize by means of a foreclosure; and only in this way could they acquire any rights over the money and stock deposited by the plaintiff and those represented by him. The ninth paragraph of the answer alleges a reorganization upon a different plan, which was for the best interests of the stockholders, and which has been assented to by all the stockholders, with the exception of those represented by the plaintiff; but it is nowhere claimed that the provisions of the original agreement in respect to change in plan have been complied with, and therefore the plaintiff is in no manner bound by their action. It seems, therefore, upon the face of the pleadings, that the plaintiff is entitled to a return of the stock, and an account of the money deposited, and this is all that has been provided for by the interlocutory decree. The allegation in the answer of the defendant that the balance of the money unexpended by them is not in their possession, but in the possession of the Knickerbocker Trust Company, seems to be entirely irrelevant, as, even if the money is deposited in the trust company, it is subject to the order of the defendants, and can be drawn out only by them. No right of the defendants having in any manner been impaired or infringed upon by the decree entered herein, the default should not be opened. Order appealed from affirmed, with costs.

BRADY and DANIELS, JJ., concur.

---

PASSAVANT *et al. v.* CANTOR *et al.*

(*Supreme Court, General Term, First Department.* May 18, 1888.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—ACTION TO SET ASIDE—BILL OF PARTICULARS.
    In an action by creditors to set aside an assignment for the benefit of creditors, plaintiffs alleged that the assignor failed to deliver to the assignee all the property

owned by him, or in which he was interested at the time of the assignment, and that he had secreted and reserved a large portion of his property with the intent to defraud his creditors. They also alleged that the assignment was the culmination of a conspiracy on the part of the assignor to fraudulently obtain goods from his creditors with the intention of fraudulently disposing of them, and to reserve them for his own benefit. The books had been turned over to the assignee. *Held*, that the assignee was not entitled to a bill of particulars specifying the property the assignor failed to turn over, and which he fraudulently concealed and reserved, and the dates of such transactions, and the parties with whom made, nor a bill specifying from whom goods were fraudulently obtained.

Appeal from special term, New York county; O'BRIEN, Justice.

Action by Herman Passavant and another against Herman Cantor and Isaac Sickle, to set aside as fraudulent a general assignment for benefit of creditors made by Sickle to Cantor. The motion of defendant Cantor for a bill of particulars as to certain matters set up in the complaint was denied, and the following opinion delivered:

"O'BRIEN, J. The defendant assignee asked for a bill of particulars of certain matters relating to plaintiff's cause of action, which alleges fraud by the assignor, invalidating an assignment for the benefit of creditors, as the basis of the action, and the particulars of the alleged fraud are required. This same motion was made before Mr. Justice PATTERSON, and was by him disposed of upon the ground that the moving papers were technically defective, and upon that ground the motion was denied, with leave to renew, so that upon new affidavits the motion is presented to me upon its merits. The paragraphs of the complaint to which reference is made are as follows: '(13) That, as plaintiffs are informed and believe, the said defendant Isaac Sickle failed to deliver to his assignee, the said defendant Herman Cantor, all the property owned by him, or in which he had an interest at the time of making of the said assignment, reported to be a general assignment, and that the said defendant Isaac Sickle, as plaintiffs are informed and believe, has fraudulently secreted and reserved for his own benefit a large portion of the property that he then had, and executed the said instrument with intent to hinder, delay, and defraud his creditors, including these plaintiffs. (14) That, as plaintiffs are informed and believe, the said instrument purporting to be a general assignment is the culmination of a conspiracy on the part of the defendant Isaac Sickle to fraudulently obtain goods, wares, and merchandise from his different creditors, including these plaintiffs, for the purpose of fraudulently disposing of the same, or a portion thereof, and with the further intention not to apply the proceeds of the said disposition to the payment of the claims of the said creditors, but to reserve the same for his own benefit, and, after greatly reducing his assets by such fraudulent reservations and fraudulent secretions, to hinder and delay his said creditors by the making of the said instrument purporting to be a general assignment.' The particulars asked for upon this motion are: *First.* A detailed statement of the property which the defendant Sickle failed to deliver to his assignee, which he fraudulently secreted and reserved for benefit; also the dates of such reservations, and the names of the persons with whom they were made. *Second.* A detailed statement of the goods claimed to have been fraudulently obtained, from whom such goods were obtained, and what portion thereof was reserved by defendant Sickle for his own benefit. The assignor and assignee, the two defendants in this action, are both parties to the conveyance which is alleged to be fraudulent, and to that extent may be regarded as in privity with each other. They appear by the same attorneys, and upon the motion before Mr. Justice PATTERSON joined in the demand for a bill of particulars, which, if granted on the assignee's application, inures to the benefit of the assignor. There is nothing presented upon this motion as to the assignee's knowledge or lack of knowledge as to the reservations. The defendant Cantor has received the books and papers of the assignor, and has made up a schedule. As said by Judge

WALLACE in *Wilson* v. *Pearson*, 13 Fed. Rep. 386: 'The particularity with which a defendant should be required to inform his adversary as to essential facts which are in controversy depends upon the nature of the facts, and the extent to which the information may be fairly presumed to be within the cognizance of the respective parties. A party should never be required to make specification of the matters which, from their inherent character, are not capable of exactitude, or which constitute evidence, rather than substantive facts, nor to give information which is more presumably within the knowledge of the adversary than his own.' There is no vagueness or uncertainty about the allegations of the complaint; the facts stated being—*First*, a failure to pass over the entire property to the assignee, and a reservation with intent to defraud creditors; and, *second*, a scheme to defraud, including the acquisition of goods on credit, and the disposition of them for cash, and a reservation for the benefit of the assignor. In *Wigand* v. *De Johnge*, 18 Hun, 406, it is said that 'if the information sought is in the possession of the party asking it, then it will be plain that the application for specific details should be denied, if it appears in addition that the parties from whom the particulars are asked are not in a situation to answer the demand.' In *Newell* v. *Butler*, 38 Hun, 104, it was said: 'The result of the numerous adjudications relating to the scope and nature of a bill of particulars is that its only proper office is to give information of the proposition which plaintiff intends to prove in respect to any material and issuable fact in the case, but not to disclose the evidence relied upon to establish any such proposition.' I have not overlooked the cases of *Claflin* v. *Smith*, 13 Abb. N. C. 206, and *Gas-Works Co.* v. *Gas-Light Co.*, *ante*, 265. In the former case a bill of particulars was ordered. In that case, however, the motion was made by one set of creditors seeking to sustain the assignment against another set of creditors seeking to set it aside on the ground of fraud. The present case seems to me to be clearly distinguishable, for in *Claflin* v. *Smith* it was evident that the persons seeking the information did not know the facts, nor were they in a position to know; and, as the learned justice there said, 'the plaintiff in such a case may be compelled to furnish a bill of particulars of the time and place of the acts and things which he intends to prove as showing fraudulent intent.' What was said in *Mayor* v. *Bank*, 14 Wkly. Dig. 492, is applicable here. These applications are addressed wholly to the discretion of the court. Whether it shall be granted or not depends on the particular circumstances of each case. Conflict in the authorities is due to the lack of similarity between the cases presented for decision. Upon the complaint, it appears to me that the effect of requiring the plaintiff to furnish a bill of particulars will not only be to compel him to disclose much of his evidence, but would be a hardship. The complaint itself appears to me to satisfy the rules applicable to equity pleadings. A general certainty is sufficient in pleadings in equity; and though a mere general charge of fraud is insufficient, it is not to be understood that particular facts and circumstances which confirm and assist should be minutely charged. It is not necessary or proper that pleadings at law or in equity should be incumbered with all the matters of evidence the complainant may intend to introduce. Wait, Fraud. Conv. § 142. Were the plaintiffs compelled to state the persons with whom, and times when, and the manner in which, the defendant had frequently disposed of his property, in a bill of particulars, they would, upon the trial, be confined to such proof, yet they might be in a position, without being possessed of this knowledge, to establish a *prima facie* case by showing such a gross deficiency between the assets which the assignor turned over to the assignee and the assets which, under ordinary business dealings, he should have had at the time of his assignment, as to put the defendants to their proof. Considering the nature of the action itself, and the relative positions of the parties, and the fact that the knowledge in reference to the statements of fraud, if they existed, are, by reason of the possession of the books,

and of the entire estate of the assignor, more within the possession of the assignee, this application is denied, without costs."

From the order entered on this decision defendant Cantor appealed.

Argued before VAN BRUNT, P. J., and DANIELS and BARTLETT, JJ.

*Blumenstiel & Hirsch* and *Leonard Bronner,* for appellant. *Carter, Hughes & Cravath,* for respondents.

PER CURIAM. The careful opinion of the learned judge in the court below gives ample reason for the denial of the motion. The order appealed from should be affirmed, with $10 costs and disbursements.

---

LAWRENCE *et al. v.* HARRINGTON,

(*Supreme Court, General Term, Second Department.* May 14, 1888.)

1. BANKRUPTCY—DISCHARGE—SUBSEQUENT PROMISE TO PAY DEBT.
Defendant, being indebted to plaintiff on certain promissory notes, became insolvent, but during the pendency of the bankruptcy proceedings, and after his discharge, he made new promises and payments on the account. *Held,* that the subsequent payments kept the account good, as against the discharge.

2. LIMITATION OF ACTIONS—RUNNING OF THE STATUTE—SUBSEQUENT PAYMENTS.
In such case, the old debt was restored, as against the statute of limitations.

Appeal from special term, Westchester county; DYKMAN, Justice.

Action by William F. Lawrence and James V. Lawrence against Alvin W. Harrington, for the amount of certain notes made by plaintiffs for the accommodation of defendant's firm, Rousseau & Harrington. There was a judgment for plaintiffs, and defendant appeals.

*Smith & Wellington,* for appellant. *Rudd & Hunt,* for respondents.

BARNARD, P. J. This action is based upon a general demand for money paid by the plaintiffs for the defendant. Annexed to the complaint is a statement of the items, all of which are either admitted or established by the evidence. The bulk of the claim is made up of firm notes. Two of these notes were given to evidence an indebtedness from defendant to plaintiffs contracted by an appropriation of the proceeds of a note made by plaintiffs for $671.43, due April 30, 1877, and delivered to defendant to get discounted for the use of the plaintiffs. The defendant discounted the note, and used the money himself. On the 24th of November, 1877, the defendant filed a petition in bankruptcy, and on the 20th of January, 1880, was declared free from debts existing at the filing of the petition. Under the case of *Palmer* v. *Hussey,* 87 N. Y. 303, this claim was properly in the bankruptcy court, and therefore was discharged by the bankrupt discharge. It was only a fraud, such as is implied between principal and agent, and in the case cited the court of appeals held that a claim for an unauthorized hypothecation of bonds was not such a fraud as was outside of the bankrupt act release. The part of the claim not discharged by the bankrupt certificate is small, amounting to $61.88, all for items subsequent to the filing of the petition. All the claim is barred by the statute of limitations,—as well the notes as the small account. The question is whether the proof is sufficient to revive the claim, both as to the items discharged and outlawed and as to the small part outlawed only. The parties seem to have been very friendly. Just before filing the petition the letters between them show that the defendant had felt compelled to violate business honor, but promised to make restoration. While the bankrupt proceedings were pending, the defendant still expressed great sorrow at the inconvenience occasioned plaintiffs, and expressed confidence that they would "not suffer a loss by us." In February, 1878, the defendant promised "aid in the matter" as soon as the pending proceedings in bankruptcy enabled them to do so. In May, 1878, the defendant, by letters, solicited an employment to plane lumber